**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BENCH WALK LIGHTING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-51-RGA |
| | ) | |
| LG INNOTEK CO., LTD., | ) | |
| LG ELECTRONICS U.S.A., INC., and | ) | |
| LG ELECTRONICS INC., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court in this patent infringement action is a motion, filed by

Defendants LG Innotek Co., Ltd. ("LGIT") and LG Electronics U.S.A., Inc. ("LGE US," and

collectively with LGIT, "Defendants"), to dismiss Plaintiff's first Amended Complaint ("FAC"),

pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (the "Motion").[1]  (D.I. 24)

Plaintiff Bench Walk Lighting LLC ("Bench Walk" or "Plaintiff") opposes the Motion.  For the

reasons set forth below, the Court recommends that Defendants' Motion be GRANTED-IN-

PART and DENIED-IN-PART in the manner set out herein.

## I.     BACKGROUND

### A.     Factual Background

#### 1.     Plaintiff and the Patents-in-Suit

In this case, Plaintiff is asserting 10 patents:  United States Patent Nos. 6,325,524 (the

"'524 patent"), 6,806,658 (the "'658 patent"), 7,115,428 (the "'428 patent"), 7,470,936 (the "'936

---

[1]     Defendant LG Electronics Inc. was also added as a Defendant to this lawsuit with
the filing of the FAC, (D.I. 23), but it has not yet been served.  Thus, LG Electronics Inc. is not a
party to this Motion.  (D.I. 25 at 1)

patent"), 7,519,287 (the "'287 patent"), 7,847,300 (the "'300 patent"), 7,488,990 (the "'990 patent"), 9,209,373 (the "'373 patent"), 9,882,094 (the "'094 patent") and 9,887,338 (the "'338 patent") (collectively, the "patents-in-suit").  (D.I. 23 at ¶ 26)  Each of the 10 Counts in the operative FAC alleges direct, indirect and willful infringement of one of the 10 patents-in-suit, and each Count lists by name an exemplary product associated with Defendants that is purported to infringe the particular patent-in-suit that is at issue in that Count (the "Accused LED Products").

Plaintiff is the assignee and owner of a portfolio of patents, which includes the patents-in-suit.  (*Id.* at ¶¶ 25, 29)  Intellectual Discovery Co. Ltd. ("Intellectual Discovery") is the former owner of Plaintiff's patent portfolio, including the patents-in-suit.  (*Id.* at ¶ 42)  Many of the patents in Plaintiff's portfolio were also originally assigned either to Agilent Technologies, Inc., the successors of Agilent Technologies, Inc.'s light-emitting diode ("LED") business, or to Avago Technologies Limited.  (*Id.* at ¶ 25)

### 2. Defendants

Defendant LG Electronics, Inc., which is not participating in this Motion, *see supra* n.1, is a publicly-held Korean corporation with its principal place of business in Seoul, South Korea. (*Id.* at ¶ 5)  It is the corporate parent of LGIT and LGE US.  (*Id.* at ¶ 10)  Indeed, it is alleged to be the corporate parent of a total of 142 subsidiaries (including LGIT and LGE US), which are all alleged (somewhat vaguely) to operate "as a common business enterprise . . . for the purpose of development, design, manufacture, sale, and distribution of LED products in an infringing manner."  (*Id.* at ¶ 9)  In light of this allegation, the FAC sometimes refers to acts of more than one of the Defendants as acts taken by "Defendants" or "LG" collectively.

Defendant LGIT is a Korean company, with its principal place of business in Seoul, and which is "owned by" LG Electronics Inc.  (*Id.* at ¶ 6; *see also* D.I. 26 at ¶ 18 (noting that LG Electronics Inc. owns "less than half" of LGIT's voting shares))  LGIT is alleged to "manufacture[] and market[ LED] products."  (D.I. 23 at ¶ 6)  As to the latter type of conduct, the FAC more specifically alleges that "[LGIT] and LG Electronics, Inc. distribute and sell infringing LEDs in Delaware" and, to that end, that:

> Future Electronics Co., a Delaware corporation, is a U[.]S[.]
> distributor of LG's infringing LEDs.  Future Electronics Co.
> imports and distributes infringing LG LEDs in the United States
> and this judicial district [i.e., Delaware].

(*Id.* at ¶ 18)

According to the sworn declaration of Jinhyun Kim, LGIT's Vice President and "Head of IP[,]" (D.I. 26 (hereinafter, the "First Kim Decl.") at ¶ 1), LGIT has no offices in and owns no real property in Delaware or anywhere else in the United States, (*id.* at ¶¶ 3-4).  Mr. Kim further states that LGIT:

> does not maintain a bank account in Delaware or elsewhere in the
> United States[,] . . . does not have employees working in Delaware
> or elsewhere in the United States, nor does it have employees that
> regularly visit Delaware or elsewhere in the United States[,] . . .
> has never paid Delaware income taxes, payroll taxes, or franchise
> fees[,] . . . has never been[] registered to do business in Delaware
> or any other jurisdiction in the United States[ and] . . . has never
> had[] an agent for service of process in Delaware.

(*Id.* at ¶¶ 5-9)  According to Mr. Kim, LGIT has not and does not "solicit or engage in business" relating to the Accused LED Products in Delaware or the United States, has not and does not "export or [sell]" the Accused LED Products there, and has not and does not "engage[] . . . in a course of conduct wherein it makes ongoing or continuous shipments of the Accused LED [Products] into Delaware or elsewhere in the United States."  (*Id.* at ¶¶ 12-14)  Mr. Kim also

states that "LGIT's website, www.lginnotek.com, . . . has not allowed[] for direct purchases of products through the website[.]"  (*Id.* at ¶ 15)  Finally, Mr. Kim claims "LGIT does not sell any Accused LED [Products] . . . anywhere in the [United States]," nor to "the Delaware corporation Future Electronics Co.[,]" and that LGIT "has never[] sold the Accused LED [Products] to any authorized dealers for LGIT [or] LGE US" in the United States.  (*Id.* at ¶¶ 28-30)

LGE US is a Delaware corporation with its principal place of business in Englewood Cliffs, New Jersey.  (D.I. 23 at ¶ 7)  It is alleged to be a "wholly-owned subsidiary" of LG Electronics Inc. and to "manufacture[] and market[] consumer electronic products containing infringing LEDs."  (*Id.*)  Mr. Kim avers that with regard to LGE US's relationship to LGIT, "LGIT is a separate and distinct corporate entity from [LGE US]," "LGIT and LGE US do not share any corporate officers or directors" and "LGIT does not have a direct business relationship with LGE US relating to the Accused LED [Products.]"  (First Kim Decl. at ¶¶ 23, 27; *see also id.* at ¶¶ 24-26)

Additional relevant facts will be provided below in Section III.

## B.    Procedural Background

Plaintiff filed its initial Complaint against LGIT and LGE US on January 14, 2020.  (D.I. 1)  On June 24, 2020, LGIT and LGE US moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  (D.I. 17)  Plaintiff then filed the FAC on July 8, 2020, in which it, *inter alia*, added LG Electronics Inc. as a third Defendant.  (D.I. 23)

LGIT and LGE US filed the instant Motion on July 22, 2020.  (D.I. 24)  The Motion was fully briefed as of August 12, 2020.  (D.I. 28)  Thereafter, on August 18, 2020, United States District Judge Richard G. Andrews referred the Motion to the Court for resolution.  (D.I. 31)  At

LGIT and LGE US's request, (D.I. 32), the Court scheduled oral argument for the Motion, which was held on December 11, 2020, (D.I. 35, hereinafter "Tr.").

## II.     STANDARD OF REVIEW

### A.     Personal Jurisdiction and Rule 12(b)(2)

Rule 12(b)(2) requires the Court to dismiss any case in which it lacks personal jurisdiction.  Fed. R. Civ. P. 12(b)(2); *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 502 (D. Del. 2017).  When a defendant moves to dismiss a lawsuit for lack of personal jurisdiction, the plaintiff bears the burden of showing the basis for jurisdiction; in a situation like this, where no evidentiary hearing has been held, the plaintiff must only make a *prima facie* showing that personal jurisdiction exists.  *See Nespresso*, 263 F. Supp. 3d at 502; *Hardwire, LLC v. Zero Int'l, Inc*., Civil Action No. 14-54-LPS-CJB, 2014 WL 5144610, at *5 (D. Del. Oct. 14, 2014) (citing cases); *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008).  To make out this *prima facie* showing, the plaintiff must "'establish[] with reasonable particularity sufficient contacts between the defendant and the forum state.'"  *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (citations omitted); *see also bioMérieux, S.A. v. Hologic, Inc*., C.A. No. 18-21-LPS, 2018 WL 4647483, at *2 (D. Del. Sept. 26, 2018).

Unlike a Rule 12(b)(6) motion, a Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings"; thus, often consideration of such a motion involves assessments of affidavits or other similar evidence submitted by the parties. *Patterson by Patterson v. F.B.I*., 893 F.2d 595, 603 (3d Cir. 1990); *see also Roe v. Wyndham Worldwide, Inc*., Civ. No. 18-1525-RGA, 2020 WL 707371, at *2 (D. Del. Feb. 12, 2020).  Once a defendant puts forward affidavits or other similar evidence in support of its Rule 12(b)(2)

motion, the plaintiff must respond with "actual proofs, [and may not only rely on the] mere allegations" found in its pleading. *Patterson by Patterson*, 893 F.2d at 603; *see also Roe*, 2020 WL 707371, at *2. All factual inferences to be drawn from the pleadings, affidavits, declarations and exhibits must be drawn in the plaintiff's favor. *Round Rock Research LLC v. ASUSTeK Comput. Inc.*, 967 F. Supp. 2d 969, 972 (D. Del. 2013); *Power Integrations*, 547 F. Supp. 2d at 369; *see also Hardwire*, 2014 WL 5144610, at *5.

The Supreme Court of the United States has recognized two classifications of personal jurisdiction: "general jurisdiction" and "specific jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citations omitted). The Supreme Court distinguished between these concepts in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), which remains the "'canonical opinion'" in the area of personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citation omitted). "Specific jurisdiction" encompasses causes of action that "'aris[e] out of or relate[] to the defendant's contacts with the forum.'" *Goodyear*, 564 U.S. at 923-24 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). "General jurisdiction" encompasses complaints arising from dealings that are distinct from the defendant's activities in the state. *Id.* at 924 (citing *Int'l Shoe*, 326 U.S. at 318); *see also Daimler*, 571 U.S. at 127. A court may exercise "general jurisdiction over foreign (sister-state or foreign-country) corporations" only when the corporation's "affiliations with the State [in which suit is brought] are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear*, 564 U.S. at 919).

In order to establish personal jurisdiction in the face of a challenge like that at issue here, a plaintiff must adduce facts sufficient to satisfy two requirements—one statutory and one

constitutional.  *Hardwire*, 2014 WL 5144610, at *6.  In analyzing the statutory prong, the Court

must consider whether the defendant's actions fall within the scope of Delaware's long-arm

statute.  *Id.*; *Power Integrations*, 547 F. Supp. 2d at 369.  In analyzing the constitutional prong,

the Court must determine whether the exercise of jurisdiction comports with the defendant's

right to due process.  *Hardwire*, 2014 WL 5144610, at *6; *Power Integrations*, 547 F. Supp. 2d

at 369 (citing *Int'l Shoe*, 326 U.S. at 316).  Due process is satisfied if the Court finds the

existence of "'minimum contacts' between the non-resident defendant and the forum state, 'such

that the maintenance of the suit does not offend traditional notions of fair play and substantial

justice.'"  *Power Integrations*, 547 F. Supp. 2d at 369 (quoting *Int'l Shoe.*, 326 U.S. at 316).

In assessing a personal jurisdiction question in this patent case, authority from the United

States Court of Appeals for the Federal Circuit is controlling.  *Avocent Huntsville Corp. v. Aten

Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008); *Boston Sci. Corp. v. Wall Cardiovascular

Techs., LLC*, 647 F. Supp. 2d 358, 364 (D. Del. 2009).  With regard to the statutory prong of the

analysis, the Federal Circuit defers to the law of the relevant state courts (here, Delaware) and

federal courts; in assessing the constitutional prong, the Federal Circuit follows its own law.

*Round Rock Research*, 967 F. Supp. 2d at 973; *Graphics Props. Holdings Inc. v. ASUS Comput.

Int'l, Inc*., 964 F. Supp. 2d 320, 324 (D. Del. 2013).

### B.      Rule 12(b)(6)

When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a

court conducts a two-part analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.

2009).  First, the court separates the factual and legal elements of a claim, accepting all of the

complaint's well-pleaded facts as true, but disregarding any legal conclusions.  *Id.* at 210-11.

Second, the court determines whether the facts alleged in the complaint are sufficient to show

that the plaintiff has a "'plausible claim for relief.'"  *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In assessing the plausibility of a claim, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III.    DISCUSSION

With their Motion, Defendants assert two different grounds for dismissal.  First, they argue that pursuant to Rule 12(b)(2), LGIT should be dismissed for lack of personal jurisdiction. Second, they assert that, pursuant to Rule 12(b)(6), the FAC should be dismissed as to both Defendants for lack of sufficient pleading.  The Court will analyze these two bases for dismissal in turn.

### A.      Personal Jurisdiction/Rule 12(b)(2)

In pushing back against Defendants' Rule 12(b)(2) Motion, Plaintiff makes two different arguments as to why it has made a *prima facie* showing of personal jurisdiction regarding LGIT. First, Plaintiff asserts that it has demonstrated specific jurisdiction as to LGIT pursuant to a "dual jurisdiction" theory of personal jurisdiction.  (*See* D.I. 27 at 5-10)  Second, Plaintiff argues that even if it has not made a sufficient showing of specific jurisdiction regarding LGIT itself, it has otherwise demonstrated that LGIT is part of a "joint business enterprise" with LGE US and LG Electronics Inc., and as to that "combined entity[,]" Plaintiff has sufficiently demonstrated that specific jurisdiction exists.  (D.I. 27 at 5-11)  The Court need only address Plaintiff's first argument here, as in doing so, it concludes that Plaintiff has met its burden.  *See ECB USA, Inc. v. Savencia, S.A.*, Civ. No. 19-731-RGA, 2020 WL 5369076, at *3 (D. Del. Sept. 8, 2020).

8

As was previously discussed, in order to establish personal jurisdiction, Plaintiff needs to satisfy two requirements:  one statutory (relating to whether the facts of record meet the requirements of Delaware's long-arm statute) and one constitutional (relating to whether those facts satisfy the requirements of constitutional due process).  Defendants acknowledge that their challenge to Plaintiff's specific jurisdiction argument is solely based on the constitutional prong—i.e., as to whether due process is satisfied.  (D.I. 25 at 6-10 (Defendants focusing only on the second due process prong of the personal jurisdiction analysis in its opening brief); Tr. at 9 ("[Defendants' Counsel:]  We did focus on the due process [issue].  There wasn't much of a distinction [between the statutory and due process issues]. . . . [W]e did just focus on the due process issue."))[2]  Thus, the Court will only address the constitutional/due process prong here.

The Federal Circuit has held that where a plaintiff seeks to show that due process is satisfied regarding a specific jurisdiction inquiry, a three-factor test is applicable:  "(1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair."  *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (internal quotation marks and citation omitted).  The first

---

[2]        The Court recognizes that Judge Andrews has previously ruled that he does not believe that the Delaware Supreme Court would conclude that the dual jurisdiction theory of personal jurisdiction satisfies the requirements of the Delaware long-arm statute, for purposes of the first, statutory prong of the personal jurisdiction analysis.  *See Round Rock Research*, 967 F. Supp. 2d at 976-77.  Other judges of this Court have come to a different conclusion, as has the Federal Circuit.  *See, e.g.*, *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, Civil Action No. 15-634-SLR-SRF, 2016 WL 4413140, at *6 n.4 (D. Del. Aug. 17, 2016), *report and recommendation adopted*, 2016 WL 5723653 (D. Del. Sept. 29, 2016); *Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 674-75 (D. Del. 2014); *see also Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1352 (Fed. Cir. 2016).  The Court need not address this issue further, however, as Defendants are not raising it here.

two of these factors correspond with the "minimum contacts" prong of the *International Shoe* analysis, and the third factor corresponds with the "fair play and substantial justice" prong of the analysis.  *Id.*[3]

Although Defendants addressed all three of these specific jurisdiction factors in their opening brief, (D.I. 25 at 7-10), by the time of their reply brief, they were focusing solely on the first "purposefully directed" factor, (D.I. 28 at 1-5).  Thus, the Court will mainly address that factor below.  The "purposefully directed" factor is satisfied if a plaintiff can sufficiently show that a defendant "purposefully shipped the accused [product] into [the forum state] through an established distribution channel[.]"  *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994); *see also AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1364 (Fed. Cir. 2012); *Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*, Civil Action No. 14-28-LPS, 2015 WL 4778828, at *3-4 (D. Del. Aug. 13, 2015) (summarizing the state of the law in this area).

One of Plaintiff's arguments as to how it has satisfied the "purposefully directed" factor—and the argument that the Court concludes is a winning one here—relates to a group of companies that use the name "Future Electronics."  The record can be a little confusing as to these Future Electronics-related entities, but here is what it shows:

- In the FAC, Plaintiff makes reference to a company called "*Future Electronics Co*." and alleges that it is a "*Delaware corporation*" and "a U[.]S[.] distributor of LG's infringing LEDs" that "imports and distributes infringing LG LEDs in the United States and [Delaware]."  (D.I. 23 at ¶ 18 (emphasis added))

---

[3]     If the plaintiff affirmatively establishes the first two of these factors, the burden shifts to the defendant to prove that, as to the third factor, personal jurisdiction is unreasonable. *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 1001-02 (Fed. Cir. 2018); *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).

- Plaintiff also attached a 2013 LGIT press release as Exhibit 2 to its answering brief (the "2013 Press Release"). This document states that LGIT "recently signed a strategic supply contract with *Future Lighting Solutions*[ "FLS"], *a Canada-based lighting distributor*, in a push to make inroads into the global LED lighting market[,]" and that FLS "operates a sales and marketing network with 160 branches in more than 70 countries worldwide." (D.I. 27, ex. 2 at 1 (emphasis added)) The 2013 Press Release also describes FLS as a "business unit of *Montreal, Canada-based Future Electronics*[.]" (*Id.* (emphasis added))

- In his supplemental declaration, Mr. Kim asserts that LGIT has a "contract with *Future Electronics Incorporated, a Canadian corporation* (referenced as Future Lighting Solutions in [Plaintiff's Exhibit 2]) . . . [by which] Future Electronics Incorporated would [make] sales of LGIT's LED products." (D.I. 29 at ¶ 4 (hereinafter the "Second Kim Decl.") (emphasis added); *see* Tr. at 12-13 ("[Defendants' Counsel:] There's an agreement between LGIT and a Canadian company called Future Electronics . . . ."))

Considering all of this record information about Future Electronics-related entities, including the content of the 2013 Press Release,[4] the Court concludes that, at a minimum, it establishes that:

---

[4]    Defendants make a few arguments in their briefing about why they think that the content of the 2013 Press Release should not be helpful to Plaintiff. Among these are that: (1) "[t]he [2013 Press Release] says nothing about what products would be supplied, and only the Accused LED [Products] are relevant to the personal jurisdiction analysis"; (2) "[t]he contract identified in the [2013 Press Release] . . . did not specify any region to which Future Electronics [] would target its sales of LGIT's LED products"; (3) "[t]he [2013 Press Release] is over seven years old and thus of questionable value for [personal jurisdiction purposes]"; and (4) "[t]he [2013 Press Release] is marketing puffery[.]" (D.I. 28 at 2-3) These arguments are pretty easily dispensed with.

First, while Defendants are correct that the 2013 Press Release does not specify the individual products that would be supplied, the press release is titled "[LGIT] starts advance into global *LED lighting* market[.]" (D.I. 27, ex. 2 at 1 (emphasis added)) It is at minimum plausible that the 2013 Press Release was referencing anywhere from one to all of the LED lighting products that LGIT manufactures and markets, including all of the Accused LED Products. Second, while it is true that the 2013 Press Release does not make specific mention of a particular region of the world where LGIT's products would be sold, its repeated focus on sales in the "global LED lighting market" is at least a piece of evidence that can support the claim that

(1) since 2013, LGIT has had a contract (either directly, or through its business unit, FLS) with

Future Electronics Incorporated, which is a Canadian company; and (2) pursuant to that contract,

Future Electronics Incorporated (and/or FLS), uses its vast global distribution network to help

LGIT sell its LED lighting products around the world.  (Tr. at 23)

 Next, Plaintiff produced the sworn affidavit of its attorney, Eric Alsop (the "Alsop

Affidavit").  (D.I. 27, ex. 1)  In that document, Mr. Alsop avers that "[o]n July 29, 2020, I

purchased a Reel of [LGIT] LEMWS59R80JZ3DA0 LED products in Wilmington, Delaware

directly from the distributor, Future Electronics.  The LEMWS59R80JZ3DA0 product is

available for purchase and delivery in Delaware."  (*Id.*)  The LEMWS59R80JZ3DA0 LED

product is one of the Accused LED Products identified in Count Three of the FAC.  (D.I. 23 at

¶ 84)

 And lastly, Plaintiff attached to the Alsop Affidavit the purchase order (the "LED

Purchase Order") for the sale that Mr. Alsop references in his affidavit.  (D.I. 27, ex. 1 at ex. A)

At the top left of the LED Purchase Order is a logo that reads "Future Electronics[.]"  (*Id.*)  And

the body of the purchase order confirms that:  (1) Mr. Alsop purchased 3,000 units of LGIT's

---

LGIT intended to sell LED products in the United States and Delaware; after all, the United
States a pretty big country in that "global" market.  (*Id.*)  Third, while the 2013 Press Release
was issued seven years ago, it is offered to establish that LGIT had and has a contract with a
Future Electronics-related entity to sell LGIT's lighting products around the globe.  And, as
noted above, Defendants have acknowledged that *this is, in fact, the case* (by confirming that
LGIT had and has such a contract with Future Electronics Incorporated).  (Tr. at 17-18)  In light
of this, the Court is not sure how the age of the press release renders it insufficiently reliable.
And fourth, the Court is a little hard-pressed to understand how the basic facts set out in the press
release (i.e., that LGIT has a contract with a Future Electronics-related entity, and that those
parties intend to sell LGIT LED lighting products world-wide) could be said to be exaggerated or
amount to "puffery."  Those seem like fairly basic factual assertions that (when made by a large
corporation in a public press release) one would expect to be accurate.  In any event, it is at least
reasonable to infer that this information is accurate, and Plaintiff gets the benefit of all
reasonable inferences at this stage.  For all of these reasons, the Court will take the content of the
2013 Press Release into account in assessing the Motion.

LEMWS59R80JZ3DA0 LED product; (2) the units were shipped to his Wilmington, Delaware address; and (3) they were shipped "from [the] USA[.]"  (*Id.*)  It is not entirely clear from the LED Purchase Order which "Future Electronics" entity shipped these Accused LED Products to Plaintiff's counsel from the United States.  But in the Court's view, the record could at least reasonably support the theory that Plaintiff seems to be suggesting in its pleading:  (1) that the entity referenced on the LED Purchase Order was a U.S.-based entity known as Future Electronics Co.; (2) this entity has a corporate and business relationship with Future Electronics Incorporated (the Canadian entity that LGIT admits it contracts with to sell LED products around the globe); and (3) Future Electronics Incorporated/FLS supplies Future Electronics Co. with LGIT LED products, so that Future Electronics Co. can then further distribute those products in the United States to purchasers like Mr. Alsop.

Thus, taking all of the information set out above into account, the Court concludes that Plaintiff has met its burden to make out a *prima facie* showing as to the first "purposefully directed" factor.  That is because the record can be fairly understood as follows:

> (1) LGIT entered into a contract with a company (i.e., Future
> Electronics Incorporated and/or FLS) with the stated goal of
> serving the "global LED lighting market" and to "supply
> products to lighting companies that are scattered around the
> world" and to "continue to expand its global market share[.]"
> (D.I. 27, ex. 2 at 1)  This indicates that LGIT intends to sell its
> products in many countries around the world, and that it has set
> up a distribution channel that includes Future Electronics
> Inc./FLS in order to make that happen.

> (2) The Court can take judicial notice of the fact that the United
> States is the world's third-largest country by population size.
> This makes it a bit more likely to the Court that if LGIT is
> targeting a global LED lighting market, LGIT is probably
> intending to target the United States as part of those efforts.

> (3) Beyond that, Future Electronics Incorporated/FLS—LGIT's
> global distribution partner—is located in Canada, which

13

borders the United States.  This makes it even more reasonable to infer that LGIT knows and intends that the United States is one of the countries where its LED lighting products will be sold.; and

(4) A "Future Electronics" entity actually sold and shipped LGIT LED products—including a product accused of infringement in this case—to a person in Delaware.  (*Id.*, ex. 1; *id.* at ex. A)  And that Delaware-destined shipment was made by the Future Electronics entity from somewhere in the United States.  (*Id.*)  This can help to establish that LGIT not only intended that its products be sold in the United States, but also in Delaware.

Thus these facts, construed in the light most favorable to Plaintiff, support with reasonable particularity the conclusion that LGIT purposefully intends to target the United States generally, and Delaware specifically, with its LED products—and that it does so by way of an established distribution channel, via its relationship with Future Electronics-related entities.  *See Power Integrations*, 547 F. Supp. 2d at 367-69, 376 (concluding that the plaintiff had established a *prima facie* showing of personal jurisdiction as to a Chinese company-defendant, sufficient to warrant jurisdictional discovery, where the record demonstrated that the defendant's accused products were incorporated in Samsung products that ended up in Delaware, and where the defendant had "established distribution channels" in the United States, including an agreement with "Future Electronics, a Canadian company, to distribute its products throughout North America, including the United States and Delaware[,]" even though the defendant stated that it did not use those distribution channels to distribute the accused products in the United States); *see also Hoffman v. Empire Mach. & Tools Ltd.*, No. 4:10-CV-00832-NKL, 2011 WL 1769769, at *1, *5-6 (W.D. Mo. May 9, 2011) (concluding that the plaintiff had pleaded a *prima facie* case of personal jurisdiction with regard to a Spanish manufacturer-defendant that sold its product to a Canadian entity that, in turn, sold that product in the United States, where the manufacturer-defendant's products were ready for use when provided to the Canadian entity and bore the

manufacturer's name and logo, where the Canadian entity sold a large percentage of the machines it received from the manufacturer in the United States and had its own network of distributors for those machines in the United States, and where the relationship between the manufacturer-defendant and the distributor extended beyond the single transaction at issue, as this all demonstrated that the manufacturer-defendant "worked with [the Canadian entity] to create a distribution system by which [the products-at-issue] regularly flowed into the entire U.S. market, including Missouri").

Now, of course it could be possible that even though LGIT's LED products end up in Delaware, via the work of an entity associated with LGIT's global distribution partner, LGIT never *intended* for that to happen. In their briefing, Defendants suggest just that: i.e., that "Future Electronics Co. could have sourced the Accused LED [Product] from a third-party supplier or any number of other ways that do not directly involve LGIT *intending* for that product to reach the U.S. and Delaware" and that "LGIT cannot reasonably be expected to know where all of its products end up once leaving custody and control." (D.I. 28 at 4 (emphasis in original)) But in order to make out its *prima facie* showing, Plaintiff does not have to disprove

all factual possibilities that might weigh against a finding of personal jurisdiction.  It just has to set out *its case* for jurisdiction with reasonable particularity.[5]  And it has done so here.[6]

Therefore, for the reasons set out above, the Court recommends that that the portion of Plaintiff's Motion relating to Rule 12(b)(2) be denied, as Plaintiff has sufficiently made out a *prima facie* showing of personal jurisdiction, entitling Plaintiff (if it wishes to do so) to take further jurisdictional discovery.  *See 3G Licensing, S.A. v. Lenovo Grp. Ltd*., Civil Action No. 17-84-LPS, 2019 WL 3974539, at *8 (D. Del. Aug. 22, 2019) (citing cases).

### B.    Rule 12(b)(6)

---

[5]    The Court understands that in Mr. Kim's declarations, he has stated that "LGIT has sold the LED Package accused under Count Three to a third party outside the United States" and that "LGIT does not sell, and has never sold the Accused LED [Products] to the Delaware corporation Future Electronics Co."  (Second Kim Decl. at ¶¶ 2-3)  But even if those statements are correct, that still leaves plenty of room for a winning personal jurisdiction theory for Plaintiff:  i.e., that LGIT transfers the Accused LED Packages to a Future Electronics entity outside the United States (e.g., Future Electronics Incorporated), and in doing so, it knows that this entity will ship those products to Delaware via the work of its associated U.S.-based company (i.e., Future Electronics Co.).  (Tr. at 44; *see also* Second Kim Decl. at ¶ 4 ("LGIT's contract with Future Electronics Incorporated, a Canadian corporation . . . did not specify any region to which Future Electronics Incorporated would target its sales of LGIT's LED products.")); *XL Specialty Ins. Co. v. Melexis GmbH*, Civ. No. 07-1018 (DRD), 2007 WL 3026683, at *4 (D.N.J. Oct. 16, 2007) (noting that "Future Electronics Corp." was a corporation headquartered in Bolton, Massachusetts, and that it was, at least as of 2007, a "subsidiary of Future Electronics Inc., a Canadian corporation").

[6]    The record also suffices to demonstrate a *prima facie* showing as to due process factors two and three.  As to the second factor (i.e., whether the claims arise out of or relate to LGIT's activities with the forum), the Alsop Affidavit demonstrates the purchase of the product that Plaintiff is accusing of infringement in Count Three of the FAC.  (D.I. 23 at ¶ 84; D.I. 27, ex. 1 at ex. A)  And it is a fair inference from the facts of record that if the accused LGIT LED lighting product at issue in Count Three could be shipped to a customer in Delaware through a Future Electronics entity, so too could the other accused LGIT LED lighting products referenced in the other nine Counts.  And as to the third factor (i.e., whether assertion of personal jurisdiction is "reasonable and fair"), in light of the above-referenced facts and the reasonable inferences drawn therefrom, Defendants have not established that it would be unfair for LGIT to face suit in Delaware if LGIT's accused products reach Delaware and LGIT intended that they do so.

Defendants assert that all of Plaintiff's 10 infringement counts in the FAC should be dismissed for failure to state a claim, pursuant to Rule 12(b)(6), for six different reasons:  (1) Plaintiff improperly "lumped" Defendants together collectively in the FAC, and thus failed to specify any individual infringing act that was performed by either of Defendants; (2) Plaintiff failed to sufficiently identify an accused product in Count Five of the FAC; (3) Plaintiff did not sufficiently link LGE US to any infringing acts related to the Accused LED Products; (4) Plaintiff failed to adequately plead indirect infringement; (5) Plaintiff did not sufficiently plead, for the purposes of indirect and willful infringement, either LGIT's or LGE US' pre-suit knowledge of the patents-in-suit, or those entities' pre-suit knowledge of how they infringed the patents-in-suit; and (6) Plaintiff failed to adequately plead compliance with the marking statute, 35 U.S.C. § 287.  (D.I. 25 at 1-2, 14-20)  The Court will address each of these issues in turn.

### 1.    Lumping Defendants Together

The Court has previously explained its view that where a plaintiff alleges that various defendants have infringed one of its patents, but where the plaintiff simply lumps all of those defendants together (i.e., by referring to them collectively) throughout the complaint, this can be potentially problematic from a pleading perspective.  To be sure, it is not impermissible *per se* for a plaintiff to refer to multiple defendants collectively in a pleading.  *See TriDiNetworks Ltd. v. NXP-USA, Inc.*, Civil Action No. 19-1062-CFC-CJB, 2020 WL 2514086, at *1 (D. Del. May 15, 2020).  But in such a case, in order for the plaintiff to have set out a plausible claim of infringement as to each defendant, the plaintiff needs to plead enough facts to render it plausible that each defendant individually has performed at least one type of U.S.-related infringing act. *See N. Star Innovations, Inc. v. Toshiba Corp.*, Civil Action No. 16-115-LPS-CJB, 2016 WL 7107230, at *2 (D. Del. Dec. 6, 2016); *see also TriDiNetworks Ltd.*, 2020 WL 2514086, at *1-2

& n.2; *Promos Techs., Inc. v. Samsung Elecs. Co. Ltd*., Civil Action No. 18-307-RGA, 2018 WL 5630585, at *3 (D. Del. Oct. 31, 2018).  Put differently, if due to a plaintiff's "lumping" of all defendants together, the Court cannot tell whether a particular defendant is alleged to have made or used or offered for sale or sold or imported an accused product in the United States, and the Court cannot understand why it is plausible that any one of those acts has occurred, then the Court cannot conclude that there is a plausible claim of infringement alleged as to that defendant. *N. Star Innovations*, 2016 WL 7107230, at *2.

In the FAC, Plaintiff does sometimes refer to all three Defendant entities collectively (i.e., as "Defendants" or "LG").  (*See, e.g.*, D.I. 23 at ¶ 1)  And the FAC surely does not make it easy to figure out exactly what kinds of infringing acts each Defendant is being tagged with.  In each Count, Plaintiff alleges that "Defendants . . . have been and are directly infringing [the patent-at-issue] . . . including through making, using[] (including through testing purposes), selling and offering for sale methods and articles made by methods infringing one or more claims of the [patent-at-issue]" and that "Defendants, individually . . . develop, design, manufacture, and distribute LED products that infringe one or more claims of the [patent-at-issue]."  (*See, e.g.,* D.I. 23 at ¶ 34)  The FAC's Counts go on to allege that "[e]ach Defendant individually manufactures, sells, and distributes the [Accused LED Product at issue in that Count]" and that "Defendant LG Electronics Inc. and [LGE US] utilize the [Accused LED Product at issue] in its electronic products" that are "manufactured, sold, and distributed in the United States."  (*See, e.g.*, *id*. at ¶ 36)  In all of this jumbled language, it is hard to ascertain what *U.S.-related infringing acts* each Defendant is really being accused of doing (especially as to a company like LGIT, which is based in Korea).  But the Court is prepared to conclude that, at a minimum, LGIT and LGE US are each being accused in the FAC of having *sold* the Accused

LED Products in the United States.  (*See* Plaintiff's Hearing Presentation, Slide 17 (Plaintiff asserting that the "FAC accuses each individual LG [D]efendant of individually selling and offering to sell each Accused [LED] Product."); D.I. 27 at 13; Tr. at 72)

In terms of whether there are enough facts pleaded to make such allegations *plausible*, one additional challenge here is that while the Court could take into account all of the extra-pleading evidence about Defendants (cited in Section III.A) for purposes of the Rule 12(b)(2) part of the Motion, it cannot do so with regard to the Rule 12(b)(6) part of the Motion.  (Tr. at 86-87)  Even so, the Court concludes that Plaintiff has done just enough to plausibly plead that each Defendant has made U.S.-based infringing sales.  As to LGIT, as was noted above, the FAC can be read to allege that it "sell[s] infringing LEDs in Delaware" in some way through "Future Electronics Co., a Delaware corporation [and] a U.S. distributor of LG's infringing LEDs" that "imports and distributes infringing LG LEDs in the United States and this judicial district."  (D.I. 23 at ¶ 18)  The law about what constitutes a U.S.-based infringing sale is nuanced and "highly factual inquiry[.]"  *Semcon IP Inc. v. Kyocera Corp.*, CIVIL ACTION NO. 2:18-CV-00197-JRG, 2019 WL 1979930, at *2-3 (E.D. Tex. May 3, 2019) (citing *Litecubes, LLC v. N. Light Prod., Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008)); *see also Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co., Ltd.*, 479 F. Supp. 2d 388, 403-05 (S.D.N.Y. 2007).  And it does seem at least plausible to the Court that a large, sophisticated electronics company like LGIT, albeit one based in Korea, engages in a U.S.-based "sale" of the Accused LED Products (in some way) with a U.S.-based distributor like Future Electronics Co.  With regard to LGE US, it is a U.S.-based company that is a part of the LG family of companies.  (D.I. 23 at ¶ 7)  And so it also seems plausible that LGE US could be selling in the United States LG-related Accused LED Products that are manufactured by LGIT.

For the reasons set out above, the Court recommends that Defendants' Motion be denied with regard to Defendants' assertion that improper "lumping" should lead to dismissal of all of the Counts.

### 2. The Accused Product in Count Five

Next, Defendants assert that Count Five should be dismissed because Plaintiff failed to sufficiently identify an accused product in that Count. (D.I. 25 at 15); *see Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (noting that to successfully plead direct infringement, a plaintiff needs to plausibly allege, *inter alia*, that a defendant's product infringes the patent-in-suit). In Count Five, Plaintiff accuses the "Flash Module 4040" of infringing the '287 patent and includes a photo image of that product that is reproduced four different times. (D.I. 23 at ¶¶ 138, 140, 142-45) Defendants' argument is that "[t]he Flash Module 4040 is a generic title not specific to LGIT or LGE US but rather a descriptive term that any LED manufacturer would use." (D.I. 25 at 15)

The problem for Defendants is that the Court cannot rely on just its say-so for the proposition that a "Flash Module 4040" is insufficiently specific as a descriptor for an actual product of Defendants. Defendants do not cite to any material in the FAC (or from anywhere else in the record) to support that assertion. (*Id.*) And even if Defendants are correct that "Flash Module 4040" is an unduly vague term, it still seems plausible to the Court that Defendants could or should be able to identify the product-at-issue by its visual depiction—one that is repeatedly reproduced in Count Five.

For these reasons, the Court recommends that Defendants' Motion be denied as to their argument regarding Count Five.

### 3. Specific Products Related to LGE US

Next, Defendants argue that any infringement claims against LGE US must fail because Plaintiff "only identifies products with LGIT model numbers as the allegedly infringing instrumentalities" and "[t]here are no facts alleged tying LGE US to any of the Accused LED [Products.]"  (D.I. 25 at 15-16)  But just because the Accused LED Products have LGIT model numbers and/or are products manufactured by LGIT, that does not mean that it is implausible that LGE US infringes.  As discussed above, LGE US is a related entity to LGIT, and so it seems very plausible that, as Plaintiff alleges, LGE US sells products in the United States that incorporate the Accused LED Products that are manufactured by LGIT.  (*See, e.g.*, D.I. 23 at ¶¶ 7, 36)

For the above reasons, the Court recommends that Defendants' Motion be denied on this ground.

### 4.    Indirect Infringement

Defendants next argue that, for various reasons, Plaintiff's allegations of indirect infringement (i.e., induced infringement and contributory infringement) should be dismissed. (D.I. 25 at 16-18)  The Court agrees that they should.

A plaintiff asserting a claim of induced infringement must show, in addition to direct infringement, that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent."  *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *see also Helios Streaming, LLC v. Vudu, Inc.*, Civil Action No. 19-1792-CFC-SRF, 2020 WL 2332045, at *2 (D. Del. May 11, 2020).  "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."  *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). With regard to what Defendants did that amounts to "encouraging another's infringement," the

FAC alleges in each Count that, "[a]s a non-limiting example, Defendants' customers such as automobile makers and manufacturers of lighting and consumer electronic devices incorporate Defendants' Accused [LED] Products in automobiles, commercial and consumer lighting, or consumer electronic devices using Defendants' provided data sheets and technical manuals." (*See, e.g.,* D.I. 23 at ¶ 49)  But as Defendants note, the FAC's text includes "no discussion of the content of those technical manuals or data sheets that show *how* 'Defendants' instruct these third parties to infringe."  (D.I. 25 at 17 (emphasis added))[7]  And though Plaintiff responded by noting that in each Count, it included a footnote with a link to "an LG product manual containing product specifications for the Accused [LED] Products that instruct LG's customers to directly infringe[,]" (D.I. 27 at 16; *see also e.g.*, D.I. 23 at ¶ 49 & n.1; Tr. at 78), that link is inoperable, (D.I. 25 at 17; Tr. at 63, 73-74, 79), so the Court and Defendants cannot access it to see what Plaintiff is talking about.  As a result, Plaintiff's allegations provide Defendants with insufficient notice about what it is they did that amounts to encouragement of infringement of the 10 patents-in-suit.  Plaintiff's inducement claims should be dismissed as a result.

To make out a claim of contributory infringement, a patentee must demonstrate, *inter alia*, that an alleged contributory infringer has sold, offered to sell or imported into the United States a component of a patented machine, manufacture, combination or composition, constituting a material part of an invention, "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use[.]"  35 U.S.C. § 271(c); *see*

---

[7]     The failure of Plaintiff to include any further detail about this "how" issue is all the more problematic here, considering that Plaintiff relies on this same stock allegation to support induced infringement claims as to a very large number of different Accused LED Products.

*also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009).  Defendants correctly noted in their opening brief that:  (1) simply because "a third-party uses a product in an infringing way is not contributory infringement; rather the accused products must be especially made for use in a combination that infringes"; and (2) here, Plaintiff's FAC seems to be alleging that "the Accused LED [Products] themselves allegedly satisfy the limitations of the asserted claims before their incorporation into any combination[—i.e.] not contributory infringement." (D.I. 25 at 18)  In addition to this problem, Plaintiff's contributory infringement allegations otherwise simply track the legal elements of such a claim, without providing any facts that flush out why it is plausible that those elements are met.  And lastly, in its answering brief, Plaintiff simply did not substantively respond to Defendants' arguments as to why its contributory infringement claims were wanting.  (*See* D.I. 27; D.I. 28 at 8); *RBATHTDSR, LLC v. Project 64 LLC*, Civil Action No. 19-1280-RGA, 2020 WL 2748027, at *4 n.2 (D. Del. May 27, 2020) ("[W]hen one side files a motion raising an issue, and the other side does not respond, the other side [can be] considered to have conceded the point.").  For all of these reasons, the Court also finds Plaintiff's contributory infringement claims to be deficiently pleaded.

Therefore, the Court recommends that Defendants' Motion be granted with regard to its request for dismissal of Plaintiff's induced and contributory infringement claims.[8]

### 5.    Pre-suit Knowledge

Claims for induced, contributory and willful infringement all require that the defendant had knowledge of the patents-in-suit and knowledge that the acts at issue constituted patent infringement.  *See Horatio Washington Depot Techs. LLC v. TOLMAR, Inc.*, Civil Action No.

---

[8]    Defendants made other arguments as to why Plaintiff's indirect infringement claims should be dismissed, (D.I. 25 at 16-18), which the Court need not address here, in light of its recommendation of dismissal of those claims on other grounds.

17-1086-LPS, 2018 WL 5669168, at *13 (D. Del. Nov. 1, 2018), *report and recommendation adopted*, 2019 WL 1276028 (D. Del. Mar. 20, 2019); *Välinge Innovation AB v. Halstead New England Corp.*, Civil Action No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018), *report and recommendation adopted*, 2018 WL 11013901 (D. Del. Nov. 6, 2018). Defendants' next argument is that Plaintiff's induced, contributory and willful infringement claims should be dismissed for "failing to plausibly allege pre-suit knowledge of the patents or knowledge of [Defendants'] infringement."  (D.I. 25 at 18)  Since the Court has already recommended dismissal of Plaintiff's indirect infringement claims, it will focus solely on the willful infringement claims as to this issue.

In the FAC, Plaintiff alleges that Defendants had pre-suit knowledge of the 10 patents-in-suit and of infringement of those patents in two ways:  (1) through Defendants' receipt and/or knowledge of a May 25, 2019 "notice letter"; and (2) (as to nine of the 10 patents-in-suit, i.e., all but the '300 patent asserted in Count Six), "due to [Defendants'] relationship with Intellectual Discovery[.]"  (*See, e.g.*, D.I. 23 at ¶¶ 41-42)  Defendants specifically challenged both bases for pre-suit knowledge in their opening brief.  (D.I. 25 at 18-19)  The Court agrees with Defendants that neither basis is sufficient to demonstrate the requisite knowledge.

With regard to the notice letter, nowhere in its answering brief did Plaintiff make any argument as to why the content of that letter sufficed to establish the requisite pre-suit knowledge.  (D.I. 27; *see also* Plaintiff's Hearing Presentation, Slides 20, 22 (Plaintiff arguing only that LGIT knew of the patents pre-suit through "its relationship with Intellectual Discovery"))  Thus, Plaintiff necessarily conceded that the letter cannot do so.  *See supra* p. 23. And even if Plaintiff's non-response were not considered a concession, the result would be the same.  Defendants attached to their opening brief an unsigned version of the letter, which they

received from Plaintiff after this suit was filed.  (D.I. 25 at 19 n.1)  That letter (in addition to only

being addressed to LGIT, not LGE US):  (1) does not mention two of the 10 patents-in-suit at all;

(2) does not appear to reference most of the Accused LED Products or their product families; (3)

"includes no attempt to describe *how* it is that LGIT is said to be infringing th[e patents that are

specifically referenced therein.]"  (*Id.* at 19 (emphasis in original); *see id.*, ex. A)  The Court

does not understand how this letter could have provided Defendants with knowledge of the two

patents-in-suit that are not specifically referenced therein (i.e., the '658 patent referenced in

Count Two and the '990 patent referenced in Count Seven).[9]  Nor does the Court understand how

the letter could have provided Defendants with notice of how they infringed any patent-in-suit,

since the letter made no attempt to do so.[10]

---

[9]    *See Parity Networks, LLC v. Moxa Inc.*, Case No. SACV 20-698 JVS(KESx),
2020 WL 6064636, at *4 (C.D. Cal. Sept. 11, 2020) (concluding that letters did not provide pre-
suit knowledge of asserted patents in part because they "did not explicitly mention the [a]sserted
[p]atents"); *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, Civil Action No. 15-545-SLR-
SRF, 2016 WL 1019667, at *3 (D. Del. Mar. 15, 2016) (concluding the same as to a letter that
included a list of 85 United States and foreign patents and applications, but did not specify the
patents-in-suit), *report and recommendation adopted*, 2016 WL 1381765 (D. Del. Apr. 6, 2016).

[10]    *See Dynamic Data Techs. v. Google LLC*, Civil Action No. 19-1529-CFC, 2020
WL 1285852, at *2-3 (D. Del. Mar. 18, 2020) ("[E]ven assuming that it *is* plausible that as of
September 2018, Google somehow knew of the existence of each of the patents-in-suit,
[d]efendants' [m]otion would still be well taken—since the [c]omplaint does not contain
plausible allegations that Google would then have known that *it was infringing* each of the
patents-in-suit.  After all, the . . . letter did not allege that Google infringed any of the patents-in-
suit, let alone *explain why it is that the accused Google products at issue . . . infringed those
particular patents*."  (third emphasis added)), *report and recommendation adopted*, 2020 WL
3103786 (D. Del. June 11, 2020); *Deere & Co. v. AGCO Corp.*, Civil Action No. 18-827-CFC,
2019 WL 668492, at *6 (D. Del. Feb. 19, 2019) (concluding that a notice letter could not have
served to provide a defendant with pre-suit knowledge of four asserted patents or its
infringement of those patents, where "the amended complaints do not allege that the letter
identified the [accused products]; nor do the amended complaints allege that the letter stated that
(let alone explained how) the combination of [some or all of the various accused products]
infringe the [asserted patents]").

As to Defendants' relationship with Intellectual Discovery, here Plaintiff did make an argument in its briefing as to why these allegations sufficiently demonstrate pre-suit knowledge: because Plaintiff "has pleaded *that LG is an owner of Intellectual Discovery*, whose purpose is to protect its members, including LG, from enforcement of the Asserted Patents" and that "[a]s an *owner of Intellectual Discovery*, LG would have had knowledge of the asserted patents." (D.I. 27 at 17 (emphasis added)) The problem is that in the FAC, Plaintiff never actually pleads that either Defendant (or any LG-related entity, for that matter) is or was an owner of Intellectual Discovery. Instead, in each Count of infringement, Plaintiff pleads only in relevant part:

> Defendants have had actual knowledge of the [patent] due to their relationship with Intellectual Discovery Co. Ltd., the former owner of Plaintiff's patent portfolio. *Intellectual Discovery is a Korean patent aggregator jointly owned by the Korean government and prominent Korean companies.* Intellectual Discovery focuses on pooling patents to protect South Korean industry, including Korean technology companies such as LG. Additionally, Intellectual Discovery sought to protect LG from enforcement of Plaintiff's patent portfolio. Therefore, LG would have had actual knowledge of Intellectual Discovery's patent portfolio, including the [patent at issue in each relevant Count].

(*See, e.g.*, D.I. 23 at ¶ 42 (emphasis added)) The FAC never says that either Defendant is one of the "prominent Korean companies" that owns Intellectual Discovery. (D.I. 28 at 9)[11] Nor does it otherwise explain the nature of the "relationship" between Defendants and Intellectual Discovery, and why that relationship might have caused Defendants to know about the patents-in-suit before this case was filed.

For these reasons, the Court recommends granting the Motion to the extent it requests dismissal of those portions of Plaintiff's willful infringement claims that seek "pre-suit"

---

[11]    Indeed, in their reply brief, Defendants assert that neither LGIT nor LGE US "own any percentage of shares/stake" in or have "any control or power over" Intellectual Discovery. (D.I. 28 at 9 n.7)

damages.  Instead, Plaintiff's willful infringement claims should be limited to those seeking

damages from the date "of service of Plaintiff's Original Complaint[,]" (*see, e.g.,* D.I. 23 at ¶

43), since the FAC plausibly alleges that Defendants had knowledge of the patents-in-suit and of

their infringement since that date.  *See also ZapFraud, Inc. v. Barracuda Networks, Inc.*, Civil

Action No. 19-1687-CFC-CJB, 2020 WL 5646375, at *2-3 (D. Del. Sept. 22, 2020); *Välinge

Innovation AB*, 2018 WL 2411218, at *9-11 & n.15.

### 6.    Compliance with the Marking Statute

Defendants have a final challenge to all claims except Count Three:  that Plaintiff failed

to adequately plead compliance with the marking statute, 35 U.S.C. § 287.  (D.I. 25 at 19-20 &

n.2)  That statute requires that if a patentee makes or sells a patented article, then in order for it

or its licensees to recover damages for patent infringement, the patentee must mark the article in

accordance with the statute (or, failing that, it must give actual notice to a direct infringer of the

infringement).  *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864

(Fed. Cir. 2020).  The patentee bears the burden to plead compliance with the marking statute.

*Express Mobile, Inc. v. DreamHost LLC*, Civil Action No. 1:18-cv-01173-RGA, Civil Action

No. 1:18-cv-01175-RGA, 2019 WL 2514418, at *2 (D. Del. June 18, 2019).

In the FAC, Plaintiff pleaded that "[it] has complied with the notice requirement of 35

U.S.C. § 287 and does not currently distribute, sell, offer for sale, or make products embodying

the [a]sserted [p]atents."  (D.I. 23 at ¶ 295)  In the Court's view, that is a sufficient statement

about Plaintiff's own past and present compliance with the statute.  Aside from Plaintiff, the

FAC does make it clear that at least one other entity, Intellectual Discovery, was a previous

owner of the patents-in-suit.  (*Id*. at ¶ 42)  And the FAC does not make any assertions about

Intellectual Discovery and marking.  But the way Intellectual Discovery's ownership model is

described in the FAC strongly suggests that Intellectual Discovery did *not* make or sell any

products reading on the patents-in-suit.  (*Id.*)  And there is no other evidence of record to suggest that Intellectual Discovery did so, or that it had any duty to mark while it owned the patents. Under these circumstances, the Court cannot find Plaintiff's failure to address Intellectual Discovery's compliance with the marking statute to be problematic.  *See In re Mobile Telecomms. Techs., LLC*, Case No. 16-md-02722-LPS-CJB, C.A. No. 16-699-LPS-CJB, 2017 WL 1053099, at *5-6 (D. Del. Mar. 20, 2017) (holding that a patentee was not required to plead facts regarding a predecessor owner-in-interest's compliance with the marking statute, where there was no evidence that the predecessor practiced the patent); *cf. Lexos Media IP, LLC v. Jos. A. Bank Clothiers, Inc.*, Civil Action No. 17-1317-LPS-CJB, 2018 WL 2684104, at *2 & n.5 (D. Del. June 5, 2018), *report and recommendation adopted*, 2018 WL 4629184 (D. Del. Sept. 27, 2018).

For the above reasons, the Court recommends that Defendants' Motion be denied with regard to this issue.

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that the Motion be GRANTED-IN-PART and DENIED-IN-PART.  More specifically, the Court recommends that the Motion be GRANTED in that:  (1) Plaintiff's claims of induced and contributory infringement should be dismissed; and (2) Plaintiff's claims for damages regarding willful infringement should be dismissed, to the extent Plaintiff seeks damages prior to the date of the filing of the original Complaint.  The Court recommends that the Motion be DENIED in all other respects.

Because it is not clear to the Court that allowing the opportunity to amend would be a futile act, because this is the first time the Court has found Plaintiff's claims to be deficiently pleaded, and because leave to amend should be given freely "when justice so requires[,]" Fed. R.

Civ. P. 15(a)(2), the Court also recommends that dismissal of the claims be without prejudice, and that, to the extent that the District Court affirms the Court's recommendation, Plaintiff  be given leave to file a further amended complaint addressing the deficiencies outlined above within 14 days.  *TriDiNetworks Ltd. v. Signify N. Am. Corp.*, Civil Action No. 19-1063-CFC-CJB, 2020 WL 2839224, at *5 (D. Del. June 1, 2020).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  January 7, 2021

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE