IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BENCH WALK LIGHTING LLC,

                Plaintiff;

v.

LG INNOTEK CO., LTD., LG
ELECTRONICS U.S.A., INC., and LG
ELECTRONICS INC.,

                Defendants.

Civil Action No. 20-0051-RGA

MEMORANDUM OPINION

Michael J. Barry, Edward M. Lilly, and Kimberly A. Evans, GRANT & EISENHOFER, P.A., Wilmington, DE; Bradley D. Liddle, Minghui Yang, Ruben Gandia, Scott W. Breedlove, CARTER ARNETT PLLC, Dallas TX,

Attorneys for Plaintiff.

Jeffrey J. Lyons, BAKER & HOSTETLER, LLP, Wilmington, DE; Kevin W. Kirsch, BAKER & HOSTETLER, LLP, Columbus, OH; Harry H. Park, BAKER & HOSTETLER, LLP, Washington, DC,

Attorneys for Defendants.

March 31, 2021

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim. (D.I. 24). The motion was fully briefed. (D.I. 25, 27, 28).

**I.     BACKGROUND**

Plaintiff Benchwalk Lighting filed this action alleging patent infringement against Defendants LG Electronics, LG Innotek ("LGIT"), and LG Electronics U.S.A. The patents-at-issue cover various technologies used in LED products. Plaintiff alleges that Defendants infringe ten of its patents, U.S. Patent Nos.: 6,325,524 ("the '524 Patent), 6,806,658 ("the '658 Patent"), 7,115,428 ("the '428 Patent"), 7,470,936 ("the '936 Patent"), 7,519,287 ("the '287 Patent"), 7,847,300 ("the '300 Patent"), 7,488,990 ("the '990 Patent"), 9,209,373 ("the '373 Patent"), 9,882,094 ("the '094 Patent"), and 9,887,338 ("the '338 Patent"). (D.I. 23 at 6-7).

Defendants filed a Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim. (D.I. 24). I referred the motion to a Magistrate Judge, who heard oral argument on December 11, 2020. (D.I. 35). The Magistrate Judge duly issued a Report and Recommendation (hereinafter "Report"). (D.I. 36).

The Report recommended that Defendants' Motion be granted in-part and denied-in part. (*Id.* at 1). Specifically, the Report recommended that "(1) Plaintiff's claims of induced and contributory infringement should be dismissed; and (2) Plaintiff's claims for damages regarding willful infringement should be dismissed, to the extent Plaintiff seeks damages prior to the date of the filing of the original Complaint." (*Id.* at 28). The Magistrate Judge recommended that the dismissal of the claims be without prejudice and that Plaintiff be given leave to file a further amended complaint, addressing the deficiencies noted in the Report. (*Id.* at 29). The Report recommended that the motion be denied as to all other issues. (*Id.* at 28).

Before me are Plaintiff's Objections to the Report (D.I. 39) and Defendants' Response (D.I. 40), as well as Defendants' Objection (D.I. 38) and Plaintiff's Response (D.I. 41). I have considered the parties' briefing and I now review the objections *de novo*.

## II.     LEGAL STANDARD

A magistrate judge may make a report and recommendation regarding a case-dispositive motion. *Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 444 (3d Cir. 2005). Under the Local Rules of this Court, a motion to dismiss is considered a dispositive motion. D. Del. LR 72.1(3). "When reviewing the decision of a Magistrate Judge on a dispositive matter, the Court conducts a *de novo* review." 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(3); *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 379 (D. Del. 2014). The Court may "accept, reject, or modify the recommended disposition…" of the magistrate judge. Fed. R. Civ. P. 72(b)(3).

## III.    ANALYSIS

### A. The Report's Denial of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

The Report concluded that Defendants' motion to dismiss for lack of personal jurisdiction should be denied. The Report determined that Plaintiff made a *prima facie* case for personal jurisdiction over LGIT. (D.I. 36 at 8). Specifically, the Report concluded that Plaintiff has shown how LGIT "purposefully directed" the accused products to the forum. (*Id.* at 10). The Report determined that LGIT intended to sell its products in many countries around the world and that LGIT's contract with Future Electronics Incorporated set up a distribution channel to do that. (*Id.* at 13). The Report took judicial notice of the fact that the United States is the third largest country by population size and concluded that it made it more likely that if LGIT is intending to target the global LED lighting market, it is intending to target the United States. (*Id.*). The Report also noted that a Future Electronics entity sold and shipped LGIT products, including a product

3

accused of infringement, to Delaware and that shipment was made from within the United States. (*Id.* at 14). The Report concluded that "these facts, construed in the light most favorable to Plaintiff, support with reasonable particularity the conclusion that LGIT purposefully intends to target the United States generally, and Delaware specifically, with its LED products – and that it does so by way of an established distribution channel, via its relationship with Future Electronics-related entities." (*Id.*).

Defendant LGIT objects to the Report's conclusion that Plaintiff has made a *prima facie* case for personal jurisdiction over it. (D.I. 38 at 2). Specifically, LGIT objects to the Report's conclusion that it has "purposefully directed" its allegedly infringing activities to the United States or Delaware. (*Id.*). LGIT argues that the Report "makes too many assumptions and unwarranted inferences in concluding that LGIT purposefully availed itself of the privilege of conducting activities in the United States or Delaware." (*Id.* at 4). LGIT contends that Plaintiff has not produced any facts that establish that LGIT "purposefully directed" any allegedly infringing activities to the United States or Delaware and that the Report's conclusion that "LGIT is probably intending to target the United States" does not meet the standard for personal jurisdiction. (*Id.* at 5). LGIT also argues that the Report greatly expands the reach of personal jurisdiction as under the Report's reasoning "foreign companies would be subject to suit in any jurisdiction in which it is possible that a global distributor of its products made the choice to distribute products and an accused product is found in that jurisdiction." (*Id.* at 9).

Plaintiff replies that the Report correctly concludes that LGIT is subject to personal jurisdiction. (D.I. 41 at 1). Plaintiff argues that the Report properly finds, under a stream of commerce theory, that LGIT purposefully directed its allegedly infringing activities to the United States and Delaware through an established distribution channel. (*Id.*). Plaintiff contends that it

has put forth facts to show that LGIT targets Delaware specifically and that LGIT has not shown that it intended to exclude Delaware from its product distribution. (*Id.* at 3). Plaintiff also argues that the Report does not inappropriately expand the scope of personal jurisdiction as the Report's analysis follows the principles of *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, which is settled Federal Circuit precedent for analyzing personal jurisdiction. (*Id.* at 4).

I agree with Plaintiff that it has made a *prima facie* case of personal jurisdiction over LGIT.

Where no evidentiary hearing on personal jurisdiction has occurred, a "plaintiff bears the burden of alleging facts sufficient to make a *prima facie* case of personal jurisdiction over the defendant." *Nespresso USA, Inc v. Ethical Coffee Co., SA*, 263 F. Supp. 3d 498, 502 (D. Del. 2017). To satisfy its burden, "the plaintiff must adduce facts which 'establish with reasonable particularity that jurisdiction over [the defendant] exists." *Id.* Here, Plaintiff has shown facts that "establish with reasonable particularity" that LGIT is subject to personal jurisdiction in Delaware.

Plaintiff has established that LGIT had a distribution contract with Future Lighting Solutions, a lighting distributor based in Canada. (D.I. 27-2, Exh. 2). Future Lighting Solutions is a business unit of Future Electronics, Inc., "and operates a sales and marketing network with 160 branches in more than 70 countries worldwide." (*Id.*). In a press release, an LG Innotek representative stated that the contract will "help instantly boost the Company's market access in the global market." (*Id.*).

Plaintiff also cited to LGIT's representation before the International Trade Commission where it stated, "LG has also engaged in substantial investments in the United States with respect to certain LED televisions and monitors that include an LG Innotek 5630 LED package." (D.I.

5

27-3, Exh. 3 at 33 of 38). Plaintiff's complaint alleges that Defendants are liable for infringement for certain actions taken in regard to the 5630 series LED. (D.I. 23 at 21).

Plaintiff has also shown that actual sales of the accused products were made in Delaware. (*See* D.I. 27-1, Exh. 1 at 1). Plaintiff proffers evidence that an individual with a Delaware address purchased LG Innotek LEMWS59R80JZ3DA0 LED products in Wilmington, Delaware from the distributor, Future Electronics. (*Id.*). The order summary has a "Future Electronics" logo on it, "LG Innotek" on the bottom underneath the product description, and states, "Item ships from USA." (*Id.*, Exh. A at 1). The order summary confirms that 3,000 units of LG Innotek LEMWS59R80JZ3DA0 LED products were shipped to the individual's Wilmington, Delaware address. (*Id.*).

This evidence establishes with reasonable particularity that LGIT purposefully directed its allegedly infringing activities to the United States market, and therefore, to Delaware. *See Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 373 (D. Del. 2008) ("Finally it must be noted that a non-resident firm's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude" Delaware.).

LGIT contracted with Future Electronics, Inc., which has "a sales and marketing network with 160 branches in more than 70 countries worldwide" to "boost" LGIT's market access "in the global market." (D.I. 27-2, Exh. 2 at 1). LGIT had the desire to "boost" its presence in the global market and worked with a distributor with a presence in 70 countries to do so. The United States is a large market, and therefore was likely a portion of the "global market" to which LGIT was purposefully directing its activities. Further, Plaintiff has established that LGIT products were purchased in and shipped to Delaware by Future Electronics from somewhere within the

United States. (*See* D.I. 27-1, Exh. A at 1). Not only has Plaintiff established that LGIT was targeting the "global market," but Plaintiff has also demonstrated that allegedly infringing products were purchased in and shipped to Delaware from within the United States. This shows with "reasonable particularity" that LGIT purposefully directed its activities to the United States and Delaware.

Adopting the Report's reasoning will not improperly expand the scope of personal jurisdiction, as the Report's analysis aligns with settled Federal Circuit precedent in *Beverly Hills Fan*. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). In 2016, the Federal Circuit stated that *Beverly Hills Fan* has been "settled precedent" for personal jurisdiction "for over 20 years." *In re TC Heartland LLC*, 821 F.3d 1338, 1341 (Fed. Cir. 2016), *rev'd on other grounds*, 137 S. Ct. 1514 (2017).

In *Beverly Hills Fan*, the Federal Circuit held that the defendants' contacts with the forum state were sufficient to warrant jurisdiction where the "defendants purposefully shipped the accused [product] into [the forum state] through an established distribution channel" and "[t]he cause of action for patent infringement is alleged to arise out of these activities." *Beverly Hills Fan*, 21 F.3d at 1565. Further, the Federal Circuit determined that the plaintiff had stated all of the facts necessary for an exercise of personal jurisdiction that satisfied due process where the plaintiff established that "defendants…placed the accused [product] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Id.* at 1566.

In this case, LGIT placed the accused products into an established distribution channel through "global" distributor Future Electronics. (*See* D.I. 27-2, Exh. 2). LGIT purposefully

7

placed the accused products into an established distribution channel that it knew had global reach with the intention of boosting LGIT's presence in the global market. And, through an established distribution channel, the accused products were purchased in and shipped to Delaware from within the United States. (*See* D.I. 27-1, Exh. 1 at 1; *id.*, Exh. A at 1). In intentionally targeting the global market through an established distribution channel with Future Electronics, LGIT intentionally targeted the United States and Delaware. This conclusion aligns with longstanding Federal Circuit precedent, *see Beverly Hills Fan*, 21 F.3d at 1565-66, and therefore will not improperly expand the scope of personal jurisdiction.

For these reasons, I overrule Defendants' objection and adopt the Report on this ground.

### B. The Report's Conclusion that Plaintiff's Notice Letter Provided Insufficient Pre-Suit Knowledge

The Report concluded that Plaintiff, in its answering brief, conceded that its Notice Letter was insufficient to establish the pre-suit knowledge necessary for pre-suit indirect and willful infringement. (D.I. 36 at 24). The Report so concluded because "nowhere in its answering brief did Plaintiff make any argument as to why the content of that letter sufficed to establish the requisite pre-suit knowledge." (*Id.*).

Plaintiff objects, arguing that it did not concede this point. (D.I. 39 at 4). Specifically, Plaintiff points to a portion of its answering brief that states that the Notice Letter meets its pleading burden. (*Id.*). Defendants counter Plaintiff's objections, arguing that Plaintiff has conceded that the Notice Letter failed to provide adequate pre-suit knowledge. (D.I. 40 at 5). Specifically, Defendants contend that Plaintiff's Objection demonstrates that it has waived this argument, as Plaintiff does not show how LGIT had knowledge of how "its conduct amounted to infringement." (*Id.*).

The Report concluded that Plaintiff conceded that the Notice Letter by itself did not provide sufficient pre-suit knowledge. (D.I. 36 at 24). I agree.

In its Motion to Dismiss, Defendants argue that Plaintiff's notice letter is insufficient to support its willful infringement claims. (D.I. 25 at 18-19). Specifically, Defendants contend that the contents of the letter only reference eight of ten patents-in-suit and that the letter does not describe how LGIT is infringing Plaintiff's patents. (*Id.*). Plaintiff's answering brief states, "Plaintiff has satisfied [its] burden [under the pleading standard] by . . . alleging that LG had knowledge of the Patents-in-Suit when it received Plaintiff's Notice Letter." (D.I. 27 at 2). In addition, Plaintiff's brief also cites to places in its complaint where it alleges that the Notice Letter provided notice of infringement. (*Id.* at 16).

At oral argument, Plaintiff stated, "I want to point out that we haven't conceded that the notice letter is insufficient, and that's in our brief." (D.I. 35 at 83). When the Magistrate Judge asked to be directed to the portion of Plaintiff's "responsive brief where [it] addressed the notice letter and its contents," Plaintiff pointed to page 16 of its brief, which, upon review, merely string cites various paragraphs in the complaint without further explanation. The relevant paragraphs contain allegations that Defendants "had actual knowledge of their infringement . . . at least as of receipt of Plaintiff's notice letter dated May 25, 2019." (*E.g.*, D.I. 23 at 10).

The cited portions of the complaint do not touch on the content of the Notice Letter. Plaintiff's answering brief does not address the contents of the Notice Letter at all, and only states that it has met it has met its pleading burden by "alleging that LG had knowledge of the Patents-in-Suit when it received Plaintiff's Notice Letter." (D.I. 27 at 2).

"[W]hen one side files a motion raising an issue, and the other side does not respond, the other side is considered to have conceded the point." *RBAHTDSR, LLC v. Project 64 LLC*, 2020

9

WL 2748027, at *4 n.2 (D. Del. May 27, 2020). Here, Defendants' opening brief raised the issue that the contents of the Notice Letter were insufficient to put Defendants on notice of the alleged infringement. (D.I. 25 at 18-19). Plaintiff did not respond to this argument in its answering brief. While the answering brief states that Plaintiff met its pleading burden with the Notice Letter and lists places in the complaint where it alleges that the Notice Letter provided pre-suit knowledge, Plaintiff did not respond to Defendants' contentions that the contents of the letter were insufficient nor did it address the sufficiency of the contents of the letter at all. While it stated at oral argument that it was not conceding that the Notice Letter was insufficient to provide pre-suit knowledge, it was unable to direct the Magistrate Judge to any portion of its answering brief that discussed the actual contents of the letter. (*See* D.I. 35 at 83). Refusal to concede a point is not the same thing as making an argument in support of the point.

As Defendants raised the issue of insufficiency of the Notice Letter's contents to provide pre-suit knowledge in their motion and Plaintiff did not respond, it is considered to have conceded the issue. *See RBAHTDSR*, 2020 WL 2748027, at *4 n.2. For this reason, I overrule Plaintiff's objections and adopt the Report's conclusion on this issue.

Plaintiff also objects to the Report's conclusion that the Notice Letter did not provide sufficient pre-suit knowledge of certain patents-at-issue. (D.I. 39 at 1). However, since I agree with the Report's conclusion that Plaintiff has conceded that the Notice Letter fails to provide sufficient pre-suit knowledge, these objections are moot. [1]

---

[1] The bulk of Plaintiff's argument in the objections is captioned as, "Plaintiff's Notice Letter Satisfies 35 U.S.C. 287(a)." (D.I. 39 at 1). The Report has nearly two pages with the caption, "Compliance with the Marking Statute." (D.I. 36). That section concludes, "the Court recommends that Defendants' Motion be denied with regard to this issue." I am thus not sure what it is that Plaintiff is objecting to here, but it seems to be moot.

10

## IV. CONCLUSION

For these reasons, I OVERRULE Plaintiff's Objections to the Report (D.I. 39) and Defendants' Objection to the Report (D.I. 38). I ADOPT the Magistrate Judge's Report. (D.I. 36). Defendants' Motion to Dismiss (D.I. 24) is GRANTED as to Plaintiff's claims of induced and contributory infringement and as to Plaintiff's claims for damages regarding willful infringement. Defendants' Motion to Dismiss is DENIED on all other grounds. The claims of induced, contributory, and willful infringement are DISMISSED without prejudice.

A separate order will be entered.